***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with modifications the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction over the parties and the subject matter.
2. An employee-employer relationship existed between the named employee and named employer.
3. The named employer is self-insured.
4. There is no issue as to misjoinder or nonjoinder of the parties.
5. Plaintiff's average weekly wage is $602.98, which yields a compensation rate of $402.01.
6. Plaintiff sustained an injury by accident on or about September 20, 2006, which was admitted as to the right knee but denied as to the back.
7. The following exhibits were stipulated into evidence at the hearing before the Deputy Commissioner: Stipulated Exhibit 1, plaintiff's medical records and Industrial Commission forms; Stipulated Exhibit Number 2, plaintiff's employment records; and Plaintiff's Exhibit Number 1, job search records.
8. The issues before the Commission are whether plaintiff's back and left knee conditions are causally related to the compensable injury by accident on September 20, 2006; to what benefits, if any, is plaintiff entitled after November 10, 2008; did plaintiff refuse suitable employment; and whether defendant is entitled to a credit for disability benefits paid after plaintiff reached maximum medical improvement on November 10, 2008.
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was born March 2, 1973. She began working for defendant-employer on February 6, 2006 as a smart cart operator and water treatment lab technician.
2. Plaintiff sustained an admittedly compensable injury by accident to her right knee on September 20, 2006 while employed by defendant-employer. Plaintiff contends that her right knee injury led to a material worsening of her low back condition.
3. Prior to the compensable injury, in late 2000, plaintiff sustained a low back injury while employed by a former employer, Meridian Automotive. Such claim was accepted as compensable and assigned IC# 192300. Plaintiff's back condition prior to the date of her compensable knee injury was severe, chronic, and longstanding. Dr. John de Perczel performed a laminotomy and diskectomy at L4-5 and L5-S1 on October 9, 2002. Dr. de Perczel assigned an 8% rating to plaintiff's back as of June 11, 2003. He stated that plaintiff was unable to return to work full time as a press operator and that it was likely that plaintiff would continue experiencing problems and would require future medical treatment in connection with her chronic back. In 2004 plaintiff entered into a compromise settlement agreement with Meridian for the compensable back injury.
4. Plaintiff's spine condition had not resolved as of the date of her compensable knee injury; rather, plaintiff had continuously sought treatment, including long-standing use of narcotic pain medication, from approximately calendar year 2000 through September of 2006, when she sustained her compensable right knee injury. Plaintiff reported to her physicians that she experienced leg weakness and had numerous falls since her 2002 back surgery.
5. After plaintiff began her employment with defendant-employer in February 2006, she sustained an injury by accident on September 20, 2006 when cardboard materials became *Page 4 
lodged in a roller system and her right knee was twisted sideways as she fell. Defendant admitted the compensability of plaintiff's injury by filing a Form 60 dated January 10, 2007.
6. Following the incident, plaintiff received extensive medical treatment including ACL reconstruction surgery by Dr. Stephen Sladicka on December 13, 2006. Dr. Sladicka released plaintiff to return to work and found her to be at maximum medical improvement as of July 12, 2007. He assigned a 10% permanent partial disability rating to plaintiff's right leg.
7. Plaintiff worked for defendant-employer until the summer of 2007, at which time plaintiff refused its continuing offer of suitable employment by voluntarily quitting her job to pursue other employment. The subsequent employment ended in November 2007 as a result of a sexual harassment issue and not as a result of plaintiff's right knee injury. The Commission does not find good cause to excuse plaintiff's refusal of suitable employment. Plaintiff presented no evidence that she inquired about possible employment with defendant-employer after she voluntarily quit.
8. On February 26, 2008, Dr. Jerry Barron performed revision ACL reconstruction on plaintiff's right knee. The results of an FCE indicated that plaintiff could return to work at the medium level. In November 2008 plaintiff was released to return to work by Dr. Barron with restrictions of 20 pounds lifting, no kneeling, squatting, crawling or climbing. Dr. Barron assigned a 20% permanent impairment rating to plaintiff's right leg.
9. Although Dr. Barron gave his opinion that plaintiff's compensable knee injury caused a worsening of plaintiff's back condition, his opinion is given little weight. Dr. Barron did not review medical records to make a determination as to plaintiff's baseline back condition prior to her knee injury or prior to the date of Dr. Barron's first treatment of plaintiff. Dr. Barron based his opinion on the history of plaintiff's condition provided by plaintiff herself, and plaintiff *Page 5 
did not fully and accurately inform Dr. Barron as to the nature and extent of her back condition prior to her compensable knee injury. Dr. Barron did not know what was causing plaintiff's back pain; he did not diagnose any specific condition pertaining to plaintiff's back; he did not treat the plaintiff for a back injury; and he indicated that if an MRI of plaintiff's back contained positive findings, he would refer plaintiff elsewhere for treatment of her spine, because treatment of the back is outside his area of practice.
10. The history of plaintiff's back condition spanned more than ten years and plaintiff did not give a thorough and accurate oral history either at the hearing before the Deputy Commissioner or to Dr. Barron. Given the complex longstanding nature of plaintiff's back condition prior to her compensable knee injury, a review of medical records pertaining to such condition is an important consideration in determining whether a worsening of such condition occurred after plaintiff's compensable knee injury. Dr. Barron did not conduct such an analysis of plaintiff's past medical records referencing continuous and regular treatment of plaintiff's back condition from 2000 to six days prior to plaintiff's compensable knee injury in September of 2006. Dr. Barron did not know and did not consider the existence of numerous other instances of trauma to plaintiff's spine both before and after plaintiff's spine surgery in 2002.
11. The Commission gives greater weight to the testimony of plaintiff's back surgeon, Dr. de Perczel, who opined that it is unlikely that plaintiff's knee injury would have caused any permanent damage to or worsening of her back condition. Dr. de Perczel stated that plaintiff's chronic back pain between 2002 and 2008 was more likely than not a continuation of the same problem he treated initially in 2002.
12. The treatment plaintiff sought in connection with her back injury after her compensable knee injury in September of 2006 was a direct and natural consequence of *Page 6 
plaintiff's prior compensable back injury claim against Meridian Automotive and was not causally related to the compensable knee injury. Additionally, plaintiff's current back condition is not the result of an independent intervening cause attributable to plaintiff's own intentional conduct.
13. Plaintiff alleges that using crutches and having an altered gait significantly aggravated her back and also caused problems with her left knee. Any increase in plaintiff's symptoms pertaining to her back associated with the use of crutches or altered gait would have been temporary in nature, and plaintiff's use of a brace or crutches, or her altered gait for discreet periods of time in connection with her right knee injury did not materially aggravate plaintiff's serious, chronic, longstanding prior back condition.
14. Plaintiff did not suffer from a "nondisabling, non-work-related" pre-existing condition. Rather, plaintiff's pre-existing back condition was related to her injury while employed by Meridian Automotive, and her prior injury by accident resulted in a permanent impairment to her back prior to her employment with defendant-employer.
15. Plaintiff did not prove that she was unable because of her compensable knee injury to earn wages in the same or any other employment, or that she had expended reasonable efforts to find employment but was unable to secure work due to her compensable injuries. Plaintiff failed to disclose her job search efforts in her discovery answers, and for the first time at the hearing before the Deputy Commissioner, plaintiff submitted a relatively short list of employers she had contacted, none of which were hiring, and many of which were laying employees off. Plaintiff offered no evidence that any of the employers on her list declined to hire her because of her compensable knee injury. *Page 7 
16. The evidence from the medical providers shows that plaintiff has repeatedly abused the narcotic pain medications her doctors have prescribed. On numerous occasions plaintiff obtained prescription renewals from one doctor and then returned to another physician days later to obtain another pain medication. On May 23, 2008, Dr. Hans Hansen of the Pain Relief Centers saw plaintiff. His plan was to move plaintiff to non-narcotic medication and he required plaintiff to sign an opioid consent form and agreement that she would not request controlled substance medication from another physician while treating with Dr. Hansen. Ten days later plaintiff received 90 tablets of Alprazolam and 240 tablets of Hydrocodone prescribed by Dr. Steven Gold. Dr. Hansen performed a pharmacy check and drug screen of plaintiff and discharged her for multiple violations of the patient care agreement. Although plaintiff reported to Dr. Hansen that she was taking Hydrocodone, her drug screen was negative for Oxycodone on May 29, 2008.
17. Based upon the overwhelming evidence of plaintiff's abuse of narcotic pain medications, the Commission does not find plaintiff credible concerning the extent of any disability due to her compensable right knee injury or concerning any alleged job search efforts she made after Dr. Barron released her to return to work after November 10, 2008.
18. Plaintiff did not prove that she requires treatment in connection with her left knee or that she has been diagnosed with any left knee ailment. Plaintiff's left knee condition, if any, is not causally related to her compensable right knee condition.
19. Plaintiff's falls after her compensable knee injury were caused by weakness in her back. Plaintiff fell repeatedly prior to her compensable knee injury for the same reason. Plaintiff did not prove an aggravation to her compensable right knee injury as a result of such falls. *Page 8 
20. As the result of the compensable injury by accident on September 20, 2006, plaintiff sustained a 20% permanent functional impairment to her right leg.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 20, 2006 plaintiff sustained a compensable injury by accident to her right knee arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The medical treatment plaintiff sought in connection with her back injury after her compensable right knee injury in September of 2006 was a direct and natural consequence of plaintiff's prior compensable back injury claim against Meridian Automotive, which claim plaintiff settled by way of a lump sum payment in 2004. N.C. Gen. Stat. §§ 97-2, 97-25.
3. Plaintiff's current back condition is not the result of an independent intervening cause attributable to plaintiff's own intentional conduct. Horne v. Universal Leaf TobaccoProcessors, 119 N.C. App. 682, 685, 459 S.E.2d 797, 799 (1995);Roper v. J.P. Stevens and Co.,65 N.C. App. 69, 73, 308 S.E.2nd 485, 488 (1983).
4. Plaintiff's knee injury did not cause or contribute to any permanent worsening of her back condition. N.C. Gen. Stat. §§ 97-2, 97-25.
5. Defendant admitted the compensability of plaintiff's injury by accident on September 20, 2006 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. *Page 9 Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
6. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
7. In the instant case, plaintiff did not prove that she was unable because of her compensable injury to earn wages in the same or any other employment, or that she had expended reasonable efforts to find employment but was unable to secure work due to her compensable injuries. No doctor has taken plaintiff out of work and it would not be futile for *Page 10 
plaintiff to seek employment. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. Additionally, plaintiff's refusal of defendant-employer's continuing offer of suitable employment by voluntarily quitting the job she was performing to pursue other employment constitutes a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32. Plaintiff's subsequent employment ended as a result of a sexual harassment issue and not as a result of plaintiff's right knee injury. The Commission does not find good cause to excuse plaintiff's refusal of suitable employment. N.C. Gen. Stat. § 97-32.
9. Plaintiff is entitled to payment by defendant for her 20% permanent partial disability rating to the right leg pursuant to N.C. Gen. Stat. § 97-31(15) as her most munificent remedy. Defendant is entitled to a credit against the rating for payments made after plaintiff reached maximum medical improvement with respect to her compensable right knee injury on November 10, 2008.
10. Plaintiff is entitled to payment by defendant of medical treatment for her compensable right knee condition. The approved medical expenses do not include treatment for plaintiff's back or any left knee condition, which are unrelated to the compensable right knee injury. N.C. Gen. Stat. §§ 97-2, and 97-31.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for low back injuries is DENIED.
2. Plaintiff's claim for left knee injuries is DENIED. *Page 11 
3. Defendant shall pay for medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury by accident.
4. Defendant shall pay plaintiff's 20% right leg rating, subject to a credit in the amount of compensation benefits paid by defendant after November 10, 2008, and subject to an attorney's fee in the amount of 25%.
5. Defendant shall pay the costs, which include an expert witness fee of $825.00 to Dr. Jerry L. Barron, if not already paid by prior order.
This 18th day of December, 2009.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER